**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **RACHEL STANLEY,** individually and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>*v.*<br><br>**EPCON COMMUNITIES, LLC,** a Ohio company, and **ROMANELLI AND HUGHES BUILDING COMPANY,** a Ohio corporation,<br><br>   *Defendants,* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Rachel Stanley ("Plaintiff Stanley" or "Stanley") brings this Class Action Complaint and Demand for Jury Trial against Defendant Epcon Communities, LLC ("Defendant Epcon" or "Epcon") and Defendant Romanelli and Hughes Building Company. ("Defendant Romanelli & Hughes" or "Romanelli & Hughes") to stop the Defendants from violating the Telephone Consumer Protection Act by making pre-recorded calls *without consent* to consumer cell phones, including pre-recorded calls to those who expressly requested that the Defendants' calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Stanley, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1.  Plaintiff Rachel Stanley is a resident of Westerville, Ohio.

2.  Defendant Epcon is an Ohio registered company headquartered in Dublin, Ohio. Defendant Epcon conducts business throughout this District and throughout Ohio.

3.      Defendant Romanelli & Hughes is an Ohio registered company headquartered in Westerville, Ohio.  Defendant Romanelli & Hughes conducts business throughout this District and throughout Ohio.

## JURISDICTION AND VENUE

4.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5.      This Court has personal jurisdiction over the Defendants because the Defendants reside and conduct business in this District and the wrongful conduct giving rise to this case was directed to and from this District. Venue is proper in this District because the Defendants and Plaintiff are located in this District.

## INTRODUCTION

6.      As the Supreme Court explained at the end of its last term: "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8.      By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10.    According to online robocall tracking service "YouMail," 3.9 billion robocalls were placed in December 2020 alone, at a rate of 124.8 million per day. www.robocallindex.com (last visited Jan. 25, 2021).

11.    The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12.    "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13.    "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14.    Defendant Epcon develops homes and communities throughout the U.S.[3]

15.    Defendant Romanelli & Hughes is a home builder that builds homes throughout Ohio.[4]

16.    Defendants plan on developing a new mixed-use development sitting on 88.46 acres consisting of office, multifamily, residential, and single family residential units.[5] [6]

17.    This joint development by Defendants is referred to as the Sharp Farm project.[7]

18.    Defendants have proposed this project to the City of Westerville.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.epconcommunities.com/about/
[4] https://rh-homes.com/about-us/
[5] https://westerville.hylandcloud.com/203AgendaOnline/Meetings/ViewMeeting?id=2307&doctype=1
[6] https://www.westerville.org/home/showdocument?id=35936
[7] *Id.*

19.     In order to garner support for the Sharp Farm project, Epcon and Romanelli & Hughes created an online website to support the project at SupportSharpFarm.com and



SupportSharpFarms.com which display both defendants' names in large letters below the Sharp Farm Project on the website SupportSharpFarms.com.

20.     Defendants Epcon and Romanelli & Hughes (or an agent working on behalf of the Defendants) placed ***pre-recorded voice message calls*** to Westerville, Ohio residents like the Plaintiff in order to persuade residents to go to the website SupportSharpFarms.com to support their Sharp Farm project.

21.     The pre-recorded voice messages directed consumers to visit SupportSharpFarm.com.

22.     Both SupportSharpFarm.com and SupportSharpFarms.com displayed the names Epcon Communities and Romanelli & Hughes additionally below the Sharp Farm Project sign up form with a link to their various company websites.

23.     The Epcon Communities button links to a EpconCommunities.com website[8] and the Romanelli & Hughes button links to a Romanelli & Hughes website.[9]

24.     In addition, the website SupportSharpFarms.com states "This campaign is hosted by EPCON."[10] This is in reference to Defendant Epcon.

25.     These calls were placed without the prior express consent from consumers.

26.     To make matters worse, the consumers that received these unwanted pre-recorded calls on behalf of the Defendants were unable to opt-out from receiving them.

27.     Consumers posted complaints online about calls they received from the Defendants .[11]

28.     The website RoboKiller.com shows that based on just 1 user report, it appears that a consumer received a total of 115 calls:



---

[8] https://www.epconcommunities.com/why-epcon/
[9] https://rh-homes.com/about-us/
[10] https://supportsharpfarm.com/
[11] https://findwhocallsyou.com/6143507420?CallerInfo
[12] https://lookup.robokiller.com/p/614-350-7420

29.     In Plaintiff's case, Plaintiff Stanley received dozens of unwanted calls from the Defendants despite having opted-out 2 times using the opt-out system provided by the Defendants.

30.     In response to these calls, Plaintiff Stanley files this lawsuit seeking injunctive relief requiring the Defendants to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

### PLAINTIFF STANLEY'S ALLEGATIONS

31.     Plaintiff Stanley began receiving unwanted calls to her cell phone from the Defendants at the beginning of January, 2021 from phone number 614-350-7420.

32.     Plaintiff Stanley heard only silence in some of the calls, while others contained a pre-recorded message regarding a rezoning project in Westerville, Ohio.

33.     On January 11, 2021, Plaintiff received unwanted calls to her cell phone number at 11:06 AM, 3:38 PM and 6:44 PM from phone number 614-350-7420.

34.     Plaintiff did not answer any calls from the Defendants on January 11, 2021.

35.     On January 11, 2021 at 6:45 PM, Plaintiff Stanley called 614-350-7420 back using her cell phone in order to try and get the calls stopped.

36.     Plaintiff heard an automated message regarding rezoning in Westerville, Ohio and specifically regarding the Sharp Farm project.

37.     The automated message directed Plaintiff to visit SupportSharpFarm.com.

38.     What Plaintiff heard when calling 614-250-7420 contained similar content to the pre-recorded voice message calls that Plaintiff heard.

39.     The automated message stated that Plaintiff could have her phone number removed from the calling list by pressing '9'.

40.     Plaintiff pressed '9' to have her phone number removed from the calling list used by the Defendants.

41.     Despite opting-out, Plaintiff continued to receive unwanted calls from the Defendants to her cell phone.

42.     In fact, Plaintiff received 2 calls from the Defendants on January 12, 2021 from phone number 614-250-7420: 1 at 11:22 AM and another at 1:01 PM.

43.     Neither of the January 12, 2021 calls were answered.

44.     On January 18, 2021, Plaintiff received calls to her cell phone from the Defendants from phone number 614-250-7420 at 10:38 AM, 3:07 PM, 5:10 PM and 8:19 PM.

45.     None of the January 18, 2021 calls were answered by Plaintiff.

46.     On January 19, 2021, Plaintiff received a call to her cell phone from the Defendants at 2:56 PM from phone number 614-250-7420.

47.     At 3:06 PM on January 19, 2021, Plaintiff called 614-250-7420 to try once more to opt-out of receiving additional calls.

48.     After hearing the automated message about rezoning and regarding the website SupportSharpFarm.com, Plaintiff pressed '9' when instructed to opt-out of receiving additional calls.

49.     Plaintiff received a pre-recorded call from the Defendants on January 19, 2021, shortly after she opted-out from receiving calls.

50.     Plaintiff answered this call and heard a pre-recorded voice message regarding rezoning and the Sharp Farm project.

51.     Plaintiff received yet another unwanted call from the Defendants on January 19, 2021 at 8:08 PM from phone number 614-250-7420.

52.     Plaintiff did not answer this call.

53.     Plaintiff received another calls from the Defendants on January 19, 2021 at 8:51 PM, from phone number 614-250-7420.

54.     When Plaintiff answered this call, all she heard was silence.

55.     At no time did Plaintiff consent to receive pre-recorded calls from either Defendant.

56.     The unauthorized pre-recorded telephone calls that Plaintiff received, as alleged herein, have harmed Plaintiff Stanley in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

57.     Seeking redress for these injuries, Plaintiff Stanley, on behalf of herself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

58.     Plaintiff Stanley brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) either Defendant or their agents called Defendants(2) using a pre-recorded voice message, (3) on their cellular telephone number.

59.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff Stanley anticipates the need to amend the Class definition following appropriate discovery.

60.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

61.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any

questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a)     whether the Defendants or an agent working on behalf of the Defendants placed pre-recorded voice message calls to Plaintiff Stanley and members of the Pre-recorded Class without first obtaining consent to make the calls;

(b)     whether the Defendants continued to place pre-recorded calls after being instructed to stop calling;

(d)     whether Defendants' conduct constitutes a violation of the TCPA;

(e)     whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

62.     **Adequate Representation**: Plaintiff Stanley will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Stanley has no interests antagonistic to those of the Class, and the Defendants have no defenses unique to Plaintiff. Plaintiff Stanley and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Stanley nor her counsel have any interest adverse to the Class.

63.     **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Stanley. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of

9

the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Stanley and the Pre-recorded No Consent Class)**

64.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

65.     The Defendants transmitted unwanted telephone calls to Plaintiff Stanley and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

66.     These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Stanley and the other members of the Pre-recorded No Consent Class.

67.     The Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiff Stanley and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Stanley individually and on behalf of the Class, prays for the following relief:

68.     An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Stanley as the representative of the Class; and appointing her attorneys as Class Counsel;

69.     An award of actual and/or statutory damages and costs;

70.     An order declaring that Defendants' actions, as set out above, violate the TCPA;

71.     An injunction requiring the Defendants to cease all unlawful calling activity, and to otherwise protect the interests of the Classes; and

72.     Such further and other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff Stanley requests a jury trial.

**RACHEL STANLEY**, individually and on behalf

of all others similarly situated,

DATED this 9th day of February, 2021.

*/s/ Brian Giles*
Brian T. Giles (0072806)
The Law Offices of Brian T. Giles LLC
1470 Apple Hill Rd.
Cincinnati, Ohio 45230
Telephone: (513) 379-2715
Brian@GilesFirm.com

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

*\*Pro Hac Vice motion forthcoming*

11